EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Transamerica Occidental Life Insurance Company <br>   Demandante-recurrido <br><br>        v. <br><br> Gabriel R. Rodríguez Febles, menor de edad, representado por su madre Vanya Febles Gordián <br>    Demandados-peticionarios <br><br><br> Orlando Rodríguez Álvarez <br>   Demandante contra co-parte | Certiorari <br><br> 2007 TSPR 67 <br><br> 170 DPR \_\_\_\_ |

Número del Caso: CC-2006-176

Fecha: 10 de abril de 2007

Tribunal de Apelaciones:

> Región Judicial de San Juan-Panel VI

Juez Ponente:

> Hon. José A. Morales Rodríguez

Abogados de la Parte Peticionaria:

> Lcda. Isabel López Rivera
> Lcdo. Edilberto Berríos Pérez

Abogado de la Parte Recurrida:

> Lcdo. Jorge Bermúdez Torregrosa

Abogado de la Parte Demandante contra-co parte:

> Lcdo. José A. Cuevas Segarra

Materia: Acción Civil (bajo la Regla 19 de Procedimiento Civil)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Transamerica Occidental Life
Insurance Company
    Demandante-recurrido

        vs.

Gabriel R. Rodríguez Febles,
menor de edad, representado       CC-2006-176     CERTIORARI
por su madre Vanya Febles
Gordián
    Demandados-peticionarios

Orlando Rodríguez Álvarez
    Demandante contra co-parte


      OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

        San Juan, Puerto Rico, a 10 de abril de 2007


      En 1998, Fernando Rodríguez suscribió un contrato de seguro con Transamerica Occidental Life Insurance Company --en adelante, "TOLIC"-- para la adquisición de una póliza de seguro de vida por un millón de dólares. En la referida póliza, Rodríguez designó como beneficiario, entre otros, a su hijo Gabriel Rodríguez en un treinta y ocho por ciento (38%) del monto total de la mencionada póliza. En la póliza se hizo la salvedad de que las cantidades que correspondieran a beneficiarios menores de edad, se mantendrían en un *"trust"* que sería administrado por el Sr. Orlando Rodríguez Álvarez, hermano del asegurado, hasta que el

menor alcanzara los 25 años de edad.[1] La nota lee específicamente: "Children's Benefit in trust with Orlando Rodríguez Álvarez, brother of the insured, until beneficiaries age 25".

Antes de morir, Fernando Rodríguez otorgó un testamento ológrafo donde reiteró su voluntad de que los beneficios de la póliza fueran mantenidos en un fideicomiso, el cual sería administrado por la Sra. Neida Pumarejo o, en su defecto, por el mismo fiduciario, esto es, Orlando Rodríguez Álvarez, que nombró en la nota antes mencionada. En dicho documento dispuso, en lo pertinente, que:

> [e]n mi seguro de vida hay cuatro beneficiarios con por cientos específicos del total de los beneficios. La primera Neyda Pumarejo Cintrón, recibirá su porción una sola vez. Los otros tres beneficiarios, mis hijos Gabriel Fernando Rodríguez Febles, Mayra Luz Rodríguez Lugo y Fernando Roberto Rodríguez Lugo, recibirán su porción del seguro como sigue: el dinero será depositado en un certificado de ahorros garantizados por el F.D.I.C. cuya institución emitidora será elegida por los administradores que se designan más adelante. De los intereses que generen la porción de cada cual, le será pagado de la manera siguiente, mensualmente: hasta los diez años: mil dólares, hasta los quince años: mil trescientos dólares, hasta los veinte años: mil quinientos dólares, hasta los veinticinco años: mil ochocientos dólares. Si los intereses no fueran suficientes, el faltante le será pagado del principal disponible de su porción. Si hubiere un sobrante de los intereses, el mismo se reinvertirá a nombre del que tuvo el sobrante. La administración de los dineros de los seguros, su inversión y distribución, serían administrados por Neyda Pumarejo Cintrón. Si ésta se incapacitara o renunciara a dicha

---

[1] El "trust" es análogo al fideicomiso, según discutido más adelante.

representación o muriera, la administración pasará a Orlando Rodríguez Álvarez. El balance que pueda haber en la cuenta de lo recibido por el seguro de cualquiera de mis hijos, les será entregado para ser usado a su sola discreción al cumplir estos 25 años. La palabra seguros en este testamento significa cualquier seguro que pague beneficios por mi muerte, cuyas porciones en cada póliza serán porcentualmente iguales a los mismos beneficios, según consten designados en la póliza que por un millón de dólares mantengo a esta fecha y cuyo agente productor fue Ariano Valle Poza, aunque en cualquier otro seguro no aparezca designación de beneficiarios ni por cientos. Se aclara que la palabra administrador, como utilizadas en las páginas uno, dos y tres de este documento, significa además un fiduciario, que tendrá, entre otras, la obligación de velar que los dineros bajo su control no sean utilizados como colateral para tomar préstamo alguno o para cualquier otro uso que no sea el aquí designado.

Cuatro años más tarde, Fernando Rodríguez falleció. En vista de ello, tanto Orlando Rodríguez como la madre del menor, Sra. Vanya Febles Gordián, reclamaron los beneficios de la póliza del seguro de vida en nombre del menor, Gabriel Rodríguez Febles. El 13 de septiembre de 2002 TOLIC presentó una demanda de "interpleader" bajo la Regla 19 de Procedimiento Civil[2], ante el Tribunal de Primera Instancia,

---

[2] Regla 19 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R 19:

Todas aquellas personas que tuvieren reclamaciones contra el demandante podrán ser unidas como demandadas y requerírseles para que litiguen entre sí dichas reclamaciones, cuando las mismas fueren de tal naturaleza que el demandante estaría o podría estar expuesto a una doble o múltiple responsabilidad. No será motivo para objetar a la acumulación el que las reclamaciones de los distintos reclamantes a los títulos en los cuales descansan sus reclamaciones no tengan un origen común o no sean idénticos sino adversos e independientes entre sí, o que el demandante asevere que no es responsable en todo o en parte

Sala Superior de San Juan, solicitando que se le ordenara a los dos interesados litigar entre sí el derecho a recibir el beneficio en nombre del menor y consignó en el tribunal la suma de $388,043.51, la cual incluye el treinta y ocho por ciento (38%) correspondiente al menor y los intereses acumulados hasta ese momento.

El litigio conllevó una complicada serie de incidentes que incluyeron una anterior comparecencia ante el Tribunal de Apelaciones. Una vez regresó el caso ante la Sala Superior de San Juan, ésta dictó una sentencia sumaria parcial en la cual determinó que el fideicomiso constituido por Rodríguez era válido puesto que el mismo no se rige por el Código Civil sino por la reglamentación concerniente al área de los seguros. En vista de ello, el foro de instancia entendió que las instrucciones allí impartidas eran obligatorias para la compañía de seguro. Así, indicó que la validez de las instrucciones del asegurado, relativas al fideicomiso, no dependen de las normas del fideicomiso del Código Civil. De igual forma, dicho foro declaró bien hecha la consignación de TOLIC, pero le impuso el pago del interés legal desde el momento de la consignación hasta la fecha de la sentencia.

---

de lo solicitado por cualquiera de los reclamantes. Un demandado que se hallare expuesto a una responsabilidad similar puede obtener el mismo remedio a través de una reclamación contra coparte o reconvención. Las disposiciones de esta regla suplementan y no limitan la acumulación de partes permitida en la Regla 17.

Insatisfecha con la decisión, Vanya Febles Gordián, a nombre propio y en representación de su hijo menor de edad, acudió ante el Tribunal de Apelaciones. En su recurso de apelación señaló, en síntesis, que el fideicomiso que designa a Orlando Rodríguez Álvarez como fiduciario es inválido por no haberse establecido mediante escritura pública. Por su parte, TOLIC acudió al Tribunal de Apelaciones cuestionando la imposición del pago de intereses computados desde la consignación hasta la fecha de la sentencia. El Tribunal de Apelaciones consolidó los recursos.

El foro apelativo intermedio modificó en parte la sentencia sumaria parcial dictada por el Tribunal de Primera Instancia. Resolvió, en síntesis, que TOLIC no estaba obligada al pago de intereses desde la consignación hasta la sentencia y confirmó el dictamen recurrido en cuanto a los restantes extremos.

Inconforme con el dictamen anterior, Febles Gordián, en representación del menor Gabriel Rodríguez acudió --mediante recurso de *certiorari*-- ante este Tribunal imputándole al foro apelativo intermedio haber errado:

> …al determinar que el fideicomiso en el seguro de vida fue confirmado en el testamento ológrafo y que éste fue oportuna y debidamente protocolizado para establecer que el fideicomiso ya consta en escritura pública.

> …al establecer que la póliza y el testamento ológrafo se complementaban y establecer que tal complemento creó el fideicomiso, llamando al testamento "complemento testamentario del seguro".

…al determinar que el testamento podía disponer del beneficio de la póliza de seguro ya que tal beneficio es un bien como otro cualquiera.

…al determinar que la consignación de TOLIC estuvo bien hecha desde el depósito de los fondos.

El 5 de mayo de 2006 <u>expedimos</u> el recurso. Contando con la comparecencia de las partes y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

A

El Código Civil establece que "[e]l fideicomiso es un mandato irrevocable [en] virtud del cual se trasmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario". 31 L.P.R.A. Sec. 2541. Este mandato puede establecerse para cualquier fin que no contravenga la ley o la moral pública. 31 L.P.R.A. Sec. 2547. Un fideicomiso puede constituirse sobre toda clase de bienes muebles e inmuebles, corporales e incorporales, presentes o futuros. 31 L.P.R.A. Sec. 2544. El fideicomitente puede crear el fideicomiso para cualquier fin y bajo cualesquiera términos o condiciones que no infrinjan la ley o la moral pública o que no se prohíban

específicamente por la ley. 31 L.P.R.A. Sec. 2562. "El fideicomiso <u>puede</u> constituirse por testamento, para que tenga efecto después de la muerte del fideicomitente, o por acto inter vivos". (Énfasis suplido) 31 L.P.R.A. Sec. 2542. Contrario a lo anterior, el Código Civil especifica que "[e]l fideicomiso inter vivos <u>debe</u> constituirse por escritura pública". (Énfasis nuestro) 31 L.P.R.A. Sec. 2543.

Los contornos de la figura del fideicomiso están claramente definidos. La dificultad que encierra la referida figura estriba en el hecho de que el fideicomiso puertorriqueño es una institución muy particular que incorpora los principios del *trust* anglosajón e intenta armonizarlos con nuestra tradición civilista. <u>Álvarez</u> v. <u>Secretario de Hacienda</u>, 78 D.P.R. 412 (1955); en recons. <u>Álvarez</u> v. <u>Secretario de Hacienda</u>, 80 D.P.R. 16 (1957). No obstante, las lagunas inherentes a la adopción en nuestra jurisdicción de esta figura de origen mixto, según reconoció este Tribunal en <u>Dávila</u> v. <u>Agrait</u>, 116 D.P.R. 549 (1986), permite que nos enriquezcamos de su acervo cultural y jurídico. "Su armonización conforme a los preceptos del Derecho civil no puede constreñir la institución que se quiso integrar". Por tanto, debemos nutrirla de la <u>flexibilidad</u> que caracteriza al *trust* anglosajón, abandonando los criterios de rigidez e inmovilidad de la fiducia romana. <u>Dávila</u> v. <u>Agrait</u>, ante, pág. 565.

B

Una vez aclarados estos aspectos relativos a la figura en controversia, debemos destacar algunos principios generales del derecho de seguros. El contrato o póliza de seguro de vida es un contrato entre una persona y un asegurador que provee para el pago de una suma específica de dinero al beneficiario designado en la póliza al morir el asegurado. El interés asegurable es la vida del asegurado. M. Jasper, Insurance Law, Oceana Publications, Ed. 1988, Cap. 2. Véase además, Art. 4.020 del Código de Seguros, 26 L.P.R.A. sec. 402.

Es menester señalar que el contrato de seguro, así como todo tipo de contrato, constituye ley entre las partes, siempre que concurran los elementos esenciales para su validez. General Accd. Ins. Co. P.R. v. Ramos, 148 D.P.R. 523 (1999). El Art. 11.250 del Código de Seguros, 26 L.P.R.A Sec. 1125, dispone que los contratos o pólizas de seguros deben interpretarse de forma global, a base de la totalidad de los términos y condiciones. González Azcuy v. Universal Solar Products, res. 7 de febrero de 2006, 2006 T.S.P.R. 18; Molina Texidor v. Plaza Acuática, res. 21 de noviembre de 2005, 2005 T.S.P.R. 172; López Castro v. Atlantic Southern Ins. Co., res. 11 de febrero de 2003, 2003 T.S.P.R. 12; S.L.G. v. Serrano, 145 D.P.R. 394 (1998); Meléndez Piñero v. Levitt & Sons, 129 D.P.R. 521 (1991). Así, cuando los términos de la póliza son claros, específicos y libres de ambigüedades, las partes tienen que

atenerse a lo allí dispuesto y no se admitirá una interpretación que vulnere el claro propósito y voluntad de las partes. Molina Texidor v. Plaza Acuática, ante.

Para atender las controversias planteadas en el caso ante nuestra consideración resulta pertinente un breve análisis de cómo se han atendido situaciones similares en el derecho anglosajón. En Broga v. Rome Trust Co. of Rome, 151 Misc. 641, 272 N.Y.S. 101 (1934) se consideró testamentario un fideicomiso sobre el dinero de una póliza de seguro de vida a pesar de que éste se creó mediante un instrumento distinto a un testamento. Ello significa que en el derecho anglosajón un fideicomiso testamentario puede crearse cuando el propósito del mismo no es transferir la propiedad del fideicomiso durante su vida, sino que tenga efecto al momento de la muerte, independientemente del instrumento que se utilice para su constitución. Robert v. Taylor, 300 F. 257, 260-261 (9th Cir.) (1924). Véase además Vigil v. Sandoval, 106 N.M. 233, 741 P.2d 836 (App. 1987). Las disposiciones en fideicomisos consideradas testamentarias son las que no tienen intención de hacer una transferencia en vida. Williams v. Thrasher, 62 F. 2d 944 (5th Cir) (1933).[3]

II

---

[3] Véase, además, Scott, Trust and the Statute of Wills, 43 Harvard L. Rev. 521 (1930); Browder, Giving or Leaving – What is a Will?, 75 Mich. L. Rev. 845 (1977); Ballantine, When are Deeds Testamentary?, 18 Mich. L. Rev. 470 (1920).

A

Con el anterior marco doctrinal en mente, pasamos a atender la controversia que nos atañe. En esencia, debemos resolver si es válido el fideicomiso establecido por Rodríguez a favor del menor Gabriel Rodríguez.

Mediante los primeros tres señalamientos de error, Febles Gordián --en representación de su hijo menor de edad Gabriel Rodríguez-- alega que es inválido el fideicomiso constituido por Rodríguez. Sostiene que el foro apelativo erró al determinar que el testamento ológrafo confirmó la validez del fideicomiso por haberse subsanado la falta de escritura pública con la protocolización del documento. Argumenta, además, que su validez no se puede basar en una alegada complementación entre el seguro de vida y el testamento. Asimismo, aduce que no es correcto en derecho señalar que el monto del seguro de vida es un bien del que Rodríguez podía disponer por medio de un testamento.

En específico, la peticionaria Febles Gordián alega que el fideicomiso establecido por el padre de su hijo Gabriel no tiene validez por tratarse de un fideicomiso *inter vivos* que requería la forma de escritura pública. Señala que, en todo caso, de tratarse de un fideicomiso *mortis* causa, éste tampoco sería válido puesto que Rodríguez no podía disponer del monto de la póliza del seguro de vida en el testamento, ya que el mismo no forma parte de la herencia.

Debemos señalar, en primer lugar, que el Código de Seguros no dispone nada sobre la validez de un fideicomiso establecido en un contrato de seguro. En consecuencia, debemos acudir, de forma supletoria, a las disposiciones del Código Civil que regulan la materia. Como vimos antes, dicho cuerpo legal requiere que los fideicomisos *inter vivos* se constituyan mediante escritura pública. El Código Civil también regula los fideicomisos *mortis* causa. Al respecto, el Código Civil establece que "puede constituirse [un fideicomiso] por testamento para que tenga efectos después de la muerte". [Énfasis nuestro.] 31 L.P.R.A. 2542.

En el caso de autos, aún cuando el fideicomiso se constituyó inicialmente en la póliza del seguro de vida, lo cierto es que Rodríguez reiteró su voluntad al respecto mediante un testamento ológrafo válido. El testamento otorgado contiene todos los elementos para que se entienda configurado el fideicomiso: 1) un fideicomitente (Rodríguez); 2) que transmite unos bienes (monto de la póliza); 3) a un fiduciario (Orlando Rodríguez, en ausencia de la Sra. Neida Pumarejo); 4) para que los administre conforme las instrucciones allí vertidas en beneficio de un fideicomisario (sus hijos, entre ellos, Gabriel).

Contrario a lo que sostiene la peticionaria Febles Gordián, el hecho de que el monto de la póliza no forme

parte del caudal[4], no impide que un causante disponga del mismo en un testamento válido. En numerosas instancias se ha reconocido la validez de disposiciones testamentarias no relacionadas al patrimonio del causante. Así, por ejemplo, Puig Brutau reconoce que la definición usual del término "testamento", --el acto mediante el cual una persona dispone para después de su muerte de todos sus bienes o de parte de ellos [Art. 616 del Código Civil, 31 L.P.R.A. Sec. 2121]--, es apenas una elemental aproximación al concepto. Puig Brutau, Fundamentos de Derecho Civil, Segunda Ed., Barcelona, Ed. Bosch, 1977, Vol. 2, pág. 5. Para el referido tratadista, el testamento "es preponderantemente, aunque no exclusiva[mente], un acto de disposición de bienes;… sin embargo, también puede contener declaraciones de carácter no patrimonial, incluso de manera exclusiva". Puig Brutau, ante, pág. 10. Puig Brutau, incluso, reconoce que el testamento puede contener una disposición para variar la designación de un beneficiario de un seguro de vida. Puig Brutau, ante, pág. 11.

El profesor Efraín González Tejera coincide con dicha posición cuando expresa que "un testamento no sólo puede referirse a disposiciones patrimoniales, sino también a relaciones de carácter no patrimonial, como el nombramiento de tutores, de albaceas, de contadores-partidores, reconocimiento de hijos naturales, instrucciones

---

[4] Como bien es sabido, el producto de una póliza no es parte del caudal relicto. Vélez Rivera v. Bristol-Myers Squidd, res. 17 de septiembre de 2002, 2002 T.S.P.R. 123.

relacionadas con funerales y entierro, etc.". E. González Tejera, <u>Derecho de Sucesiones</u>, Primera Ed., San Juan, Ed. UPR, 2002, Tomo 2, pág. 9.

Puede constituirse el fideicomiso "por testamento, sin prescribir que éste deberá ser abierto,–el único que se otorga por escritura pública– queda claramente implícito que el fideicomiso puede constituirse por cualquier otra clase de testamento…incluso cuando la particular clase no requiera la escritura pública". L. Sánchez Vilella, <u>El Fideicomiso Puertorriqueño III</u>, 37 Rev. Col. Abog. 417, 427 (1976). Véase además <u>García</u> v. <u>Rexach</u>, 65 D.P.R. 526 (1945). En vista de lo anterior, resulta forzoso concluir que el fideicomiso en controversia, tal como se constituyó en el testamento ológrafo, tiene validez en nuestro ordenamiento jurídico.

B

Ahora bien, el recurso ante nos, requiere que nos pronunciemos en cuanto a la validez del fideicomiso tal como se constituyó en la póliza del seguro de vida. En este punto, debemos aclarar que --contrario a lo que concluyó el foro apelativo-- de entenderse que el fideicomiso es *inter vivos*, de ninguna manera se hubiera podido subsanar la ausencia del requisito de escritura pública con la mera protocolización del testamento ológrafo. El acta de protocolización no es el vehículo correcto para elevar a público un documento privado suscrito en Puerto Rico. <u>Ponce</u>

Real Estate v. Registrador, 87 D.P.R. 215 (1963). Para

ello, se requiere el cumplimiento con la Regla 26 del

Reglamento Notarial[5], la cual dispone que al elevar un

documento privado a público se tiene que acudir ante un

notario público y redactar nuevamente el contrato privado

haciendo constar la existencia previamente del documento,

lo cual aquí no ha ocurrido. En consecuencia, de entenderse

que el fideicomiso es de carácter *inter vivos*, no tendría

validez bajo nuestro ordenamiento.

No obstante, el mandato expresado por Fernando

Rodríguez en la póliza de seguro no puede ser considerado

---

[5] Regla 26 del Reglamento Notarial:

> El Notario podrá elevar a escritura pública un
> documento privado cuyo contenido es materia de
> contrato.

> En tal caso, el Notario podrá optar por redactar
> nuevamente el contrato privado, pero hará constar
> en la escritura la existencia previa del documento
> privado.

> Podrá optar, además, por unir el contrato privado
> a la escritura que autoriza sin redactarlo
> nuevamente. En tal caso el Notario relacionará el
> contrato privado, dará fe de haberlo leído, de
> haber aceptado su redacción, del número de folios
> de que consta éste, y de que su texto se incorpora
> como si estuviere transcrito, de todo lo cual los
> comparecientes en su presencia lo ratifican y
> firman el original de la escritura.

> En ambos casos será indispensable que comparezcan
> al acto todas las partes que intervinieron en el
> documento privado o, en su defecto, sus herederos,
> representantes legales o voluntarios a prestar su
> consentimiento.

> El Notario cumplirá, además, con todas las formas
> y solemnidades que requiere la autorización de una
> escritura pública.

un fideicomiso *inter vivos,* sino un fideicomiso *mortis causa,* puesto que tendría efecto a su muerte. En vista de ello, debemos aplicar las disposiciones aplicables a los fideicomisos *mortis causa.*

Como antes señalado, el Código Civil dispone que el fideicomiso **puede** constituirse por testamento para que tenga efectos después de la muerte. 31 L.P.R.A. Sec. 2542. (Énfasis nuestro). De la naturaleza permisiva de esta redacción podemos colegir que esta disposición no representa una limitación a la posibilidad de que se realice válidamente de otra forma que no sea un testamento, sobre todo si tomamos en cuenta que acto seguido, el Código establece con carácter mandatario el requisito de escritura pública para los fideicomisos *inter vivos.* 31 L.P.R.A. Sec. 2543.

No existe nada en nuestro ordenamiento que impida que el fideicomiso *mortis causa,* que se hace para que tenga efectos después de la muerte del fideicomitente, se haga a través de un mecanismo legal distinto al testamento. De hecho, ajustándonos a las expresiones de la doctrina, entendemos que no se debe restringir el marco de aplicación de la figura, cuando la misma ha sido acogida, precisamente, por la valiosa flexibilidad que se le reconoce.

Más aun, no es difícil encontrar estudiosos de la materia que hayan anticipado la posibilidad de que disposiciones sobre fideicomisos puedan incluirse en un

contrato de seguro de vida. Se puede constituir un fideicomiso "cuando quien toma un seguro de vida y se ha reservado la facultad de cambiar beneficiario, indica al ya designado que conserve póliza e indemnización en *trust* a favor de un tercero". R. Batiza, El Fideicomiso, Cuarta Ed., México, Ed. Porrúa, Pág. 181. De hecho, Batiza entiende, que "[d]ebe estimarse además como testamentario el fideicomiso constituido en acto que no sea precisamente un testamento, pero cuyos efectos hayan de surtirse después de la muerte del constituyente". R. Batiza, ante. Esto ilustra la flexibilidad que la doctrina es capaz de otorgarle a la figura del fideicomiso.

Conforme a lo anterior, la naturaleza del seguro de vida hace viable que se admita la validez de un fideicomiso en él constituido, si cumple con las disposiciones legales aplicables. Sabido es que este tipo de seguro constituye un acuerdo en el que la compañía de seguros se obliga a pagar cierta cantidad de dinero a la persona(as) nombrada(as) como beneficiaria(s) cuando se produzca la muerte del asegurado. Véase 26 L.P.R.A. Sec. 402 y 26 L.P.R.A. Sec. 102. Siendo así, no cabe duda de que el contrato de seguro de vida representa el tipo de negocio que adquiere vida a la muerte del interesado. Por ende y, visto que la disposición sobre fideicomisos *mortis causa* no parece ser limitativa, entendemos que el fideicomiso constituido en la póliza del seguro de vida en el presente caso es válido en derecho.

C

Finalmente, atendemos el último señalamiento de error. La peticionaria Febles Gordián aduce que no procedía eximir a TOLIC del pago de intereses desde la fecha de la consignación del dinero del menor hasta la fecha en que se dictó la sentencia. Su argumento se basa en la disposición del Código Civil que establece que la obligación subsiste mientras el acreedor no hubiere aceptado la consignación o no hubiere recaído la declaración judicial de que está bien hecha. Art. 1134 del Código Civil, 31 L.P.R.A. Sec. 3184. No le asiste la razón a la peticionaria.

La consignación es "el depósito judicial de la cosa debida. Se pone la cosa bajo el poder de la autoridad judicial, que la retendrá y pondrá a disposición del acreedor". J. Vélez Torres, ante, pág. 186. Esta figura "produce la extinción de la obligación; [y] es una forma de pago de la misma cuando no se cuenta con la voluntad del acreedor". R. Bercovitz, Rodríguez Cano y E. Valladares Rascón, Comentarios al Código Civil y Compilaciones Forales, Madrid Edersa, 1991, Tomo XVI, Vol. 1, pág.297.

Dicha figura está regulada por los Artículos 1130 al 1135 del Código Civil, 31 L.P.R.A. sec. 3185 a 3189. Mientras que el Artículo 1130 dispone que la consignación libera de responsabilidad al deudor "cuando varias personas pretendan tener derecho a cobrar", el Artículo 1134 del Código Civil, 31 L.P.R.A. Sec. 3184, dispone que:

> Hecha debidamente la consignación, podrá el deudor pedir al tribunal o juez que mande cancelar la obligación.
>
> Mientras el acreedor no hubiere aceptado la consignación, o no hubiere recaído la declaración judicial de que está bien hecha, podrá el deudor retirar la cosa o cantidad consignada, dejando subsistente la obligación.

Si bien la referida disposición legal dispone que el deudor no queda liberado de su obligación hasta la declaración judicial de corrección, ello no implica que esté obligado al pago de intereses desde el momento de la consignación hasta que recaiga dicha declaración. Una cosa es la liberación formal de la obligación surgida en virtud del contrato y otra, el requisito del pago de intereses. "[L]a doctrina española *coincide en que la eficacia retroactiva de la consignación bien hecha alcanza hasta el momento en que tuvo lugar la práctica del depósito*". J. Vélez Torres, ante, pág. 189.

El hecho de que el tribunal *a quo* haya tardado en declarar correcta la consignación, no debe ser causa para imponerle a un deudor el pago de intereses por una suma que entregó conforme lo exige nuestro ordenamiento. Si, bajo esas circunstancias, se impusiera el pago de intereses desde la fecha de la consignación, desvirtuaríamos el propósito mismo de la Regla 19 de Procedimiento Civil, que permite la litigación de partes adversas y que representa una de las instancias de mayor utilidad de la figura de la

consignación. Véase el Art. 1130 del Código Civil, 31 L.P.R.A. Sec. 3180.

La determinación judicial lo que hace "es declarar que la consignación esta bien hecha, reconociéndole los efectos liberatorios que perseguía el deudor desde que depósito la cosa, por lo tanto debe surtir efecto desde ese momento". J. Vélez Torres, ante, pág. 189. Concluimos, pues, que aunque la liberación formal del deudor depende de que el tribunal determine que la consignación está bien hecha, el pago de intereses a partir de la consignación no procede si, en efecto, se declara su corrección. Resolvemos que en casos como el presente, donde se declara correcta la consignación, se "retrotraen los efectos del pago al momento del depósito de la cosa…". R. Bercovitz, Rodríguez Cano y E. Valladares Rascón, ante, pág. 299.


III

A la luz de los fundamentos antes expresados, procede la <u>confirmación</u> de la Sentencia emitida por el Tribunal de Apelaciones en el presente caso, aun cuando por fundamentos distintos.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Transamerica Occidental Life
Insurance Company
    Demandante-recurrido

       vs.

Gabriel R. Rodríguez Febles,
menor de edad, representado       CC-2006-176     CERTIORARI
por su madre Vanya Febles
Gordián
    Demandados-peticionarios

Orlando Rodríguez Álvarez
    Demandante contra co-parte


SENTENCIA

San Juan, Puerto Rico, a 10 de abril de 2007


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria, aun cuando por fundamentos distintos, de la emitida por el Tribunal de Apelaciones en el presente caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre en el resultado sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo